Alfonso **RODRIGUEZ–SERRANO**, Petitioner,

v.

John **ASHCROFT**, Attorney General, Respondent.

No. 02–73449.
Agency No. A93–198–373.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 3, 2004.

Decided Dec. 27, 2004.

Alfonso Rodriguez–Serrano, Douglas, AZ, pro se.

Regional Counsel, Western Region Immigration & Naturalization Service, Laguna Niguel, CA, District Director, Immigration & Naturalization Service, Phoenix, AZ, OIL, DOJ—U.S. Department of Justice Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

Before B. FLETCHER, NOONAN, and THOMAS, Circuit Judges.

## MEMORANDUM*

Alfonso Rodriguez–Serrano petitions for review of a decision of the Board of Immigration Appeals (the Board) and of a relat-ed decision of the Legalization Appeals Unit (the LAU). We deny both petitions.

The parties are familiar with the facts, and we confine ourselves to those central to the dispositive issue. Rodriguez–Serrano's only chance of avoiding deportation is his claim that he was entitled to a grant of residence as a Special Agricultural Worker (SAW) under the Immigration and Naturalization Act, § 210, 8 U.S.C. § 1160 (1965). To obtain this benefit, Rodriguez–Serrano had to establish by the preponderance of the evidence that he had performed at least 90 days of seasonal agricultural service during the twelve-month period ending May 1, 1986. *Id.* § 1160(a)(1)(B) and (b)(3)(B)(i). Rodriguez–Serrano supplied the affidavit on Form I–705 of one Jessie Pesina, contracting foreman at Action Produce at Willcox, Arizona, who stated that Rodriguez–Serrano had worked 123 days at this farm thinning and weeding lettuce between May 1, 1985 and May 26, 1986. Rodriguez–Serrano also submitted his own affidavit to the same effect as well as notarized letters from two laborers, one of whom stated that Rodriguez–Serrano worked for Pesina during the relevant dates and the other of whom stated that Rodriguez–Serrano worked with him at Willcox during the relevant period.

Six months after Rodriguez–Serrano's application was filed, Pesina executed an affidavit at the behest of the United States Attorney in Tucson, stating that she had supplied approximately 1,000 Form I–705 to persons applying for SAW status; with the exception of fifty-four persons now listed by her in her own handwriting, the other applicants had been provided by her with false documentation. Rodriguez–Serrano was not listed as an exception.

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

Rodriguez–Serrano was informed of this evidence by the Immigration Service. He offered nothing further to rebut it. The Service denied his application. Rodriguez–Serrano appealed to the LAU, which, after a remand to obtain clarification of the information, held that "the derogatory information regarding Jessie Pesina directly contradicts the appellant's claim."

The findings of fact and determinations of the LAU are "conclusive unless the applicant can establish abuse of discretion or that the findings are directly contrary to clear and convincing facts contained in the record considered as a whole." 8 U.S.C. § 1160(e)(3)(B) (1995). Pesina's second affidavit canceled her first affidavit. At the same time, the second affidavit provided the basis for a fair inference that Rodriguez was party to Pesina's fraud; his own affidavit and hers marched hand in hand; the two workers' notarized letters were not clear and convincing to the contrary. We cannot say that the LAU in its careful decision abused its discretion or made findings contrary to the record considered as a whole.

Rodriguez–Serrano's appeal from the Board is without merit.

The petitions are DENIED.

**B. FLETCHER,** Circuit Judge, dissenting.

I respectfully dissent. The LAU—and the majority—have placed the burden of proof on Rodriguez–Serrano to defend his eligibility for SAW status. But once an applicant for SAW status comes forward with "sufficient evidence to show the extent of [qualifying] employment as a matter of just and reasonable inference," the governing statute explicitly shifts the burden to the government "to disprove the alien's evidence." 8 U.S.C. § 1160(b)(3)(B)(iii). To rebut Rodriguez–Serrano's ample evidence of qualifying employment, the government relied entirely on the employer's retraction of her initial affidavit, along with a list of 54 "legitimate" workers out of 1,000 for whom she signed affidavits. The government made no attempt to verify the comprehensiveness of Pesina's handwritten list, which for all the record shows may have simply been a list of whichever legitimate workers Pesina could remember off the top of her head. Nor did the government discredit the co-workers who wrote letters in support of Rodriguez–Serrano's initial application. The burden was on the government, and it was not met. The LAU abused its discretion in finding otherwise. The petition for review should be granted.

In support of his initial applicaion, Rodriguez–Serrano submitted an affidavit from his employer, Jessie Pesina, along with two notarized letters from co-workers, all corroborating Rodriguez–Serrano's claim of qualifying employment. With respect to proof on an applicant's eligibility, the SAW statute provides:

> An alien can meet such burden of proof if the alien establishes that the alien has in fact performed [the requisite employment] by producing sufficient evidence to show the extent of that employment as a matter of just and reasonable inference. *In such a case, the burden then shifts to the Attorney General to disprove the alien's evidence with a showing which negates the reasonableness of the inference to be drawn from the evidence.*

8 U.S.C. § 1160(b)(3)(B)(iii) (emphasis added).

Once Rodriguez–Serrano came forward with the original Pesina affidavit and two supporting notarized letters, he had clearly "produc[ed] sufficient evidence to show the extent of [his] employment as a matter of just and reasonable inference." The bur-

den therefore shifted to the government to "disprove the alien's evidence." On its first consideration of Rodriguez–Serrano's case, the LAU did recognize that the burden was on the government, but in the LAU's final consideration, it failed to consider the evidence in this light.

Pesina's implied retraction of her original affidavit for Rodriguez–Serrano was not enough to discharge the government's burden. The falsity of Pesina's initial affidavit for Rodriguez–Serrano is not manifest from her second affidavit itself; rather, it must be inferred from that affidavit in combination with the absence of Rodriguez–Serrano's name from Pesina's list of legitimate workers. The inference is subject to considerable doubt. Pesina claims to have named in her attached list the only 54 workers—out of 1,000 for whom she signed affidavits—who actually worked for her. With so many affidavits at issue, the manner in which Pesina's list of 54 out of 1,000 workers was generated is crucial to its reliability, and yet the record contains no evidence as to how Pesina created her list. If she were working solely from memory, for example, it would have been easy for her to forget one out of 1,000 workers whose applications she signed over the course of an entire year. There is no indication that the government ever asked Pesina about Rodriguez–Serrano in particular or made other efforts to verify the comprehensiveness of the list. With all of these doubts, Pesina's list cannot be said to "negate[ ] the reasonableness of the inference to be drawn" from Rodriguez–Serrano's initial evidence.

The original Pesina affidavit in support of Rodriguez–Serrano was corroborated by two notarized letters that have not been discredited in any way. Though the letters alone would not have been enough to meet Rodriguez–Serrano's burden of proof in the first instance (because they did not indicate the numbers of qualifying days Rodriguez–Serrano worked within the relevant period), the letters do contain specific information corroborating the claims on Rodriguez–Serrano's application and Pesina's initial supporting affidavit. Because the letters support Pesina's original affidavit, they could not simply be ignored; rather, the letters added to the quantum of evidence the government had to overcome in order to discharge its burden of disproving the original Pesina affidavit. There is no showing that the government ever sought to disprove the veracity of the letters, though both letters included the names and addresses of the writers, along with indications of their willingness to be contacted and provide further information. The government simply did not do its homework.

The majority makes much of the fact that Rodriguez–Serrano, once informed of the Pesina affidavit, did not offer further evidence. Maj. op. at 13. Under the SAW statute, however, he did not have to. Once Rodriguez–Serrano provided "sufficient evidence to show the extent of [qualifying] employment as a matter of just and reasonable inference," the burden was on the government "to disprove [his] evidence." 8 U.S.C. § 1160(b)(3)(B)(iii). The government did not meet that burden.

The majority seeks to bolster its conclusion by suggesting that Rodriguez–Serrano participated in Pesina's fraud. Maj. Op. at 13. This entirely speculative suggestion begs the question. One might conceive of fraud on the part of Rodriguez–Serrano (though none is suggested on this record) *if* Pesina's initial affidavit for him had been false. But the veracity of Pesina's initial affidavit is precisely what is at issue in this case. In speculating that Rodriguez–Serrano played a role in Pesina's fraud on his initial application, the majority assumes the very fact—Pesina's

fraud with respect to Rodriguez–Serrano—that it is trying to prove.

In the end, there are too many unanswered questions for the LAU to have found that the government discharged its burden of disproving Rodriguez–Serrano's evidence. Pesina's original affidavit in support of Rodriguez–Serrano was corroborated by two notarized letters from individuals indicating personal knowledge of Rodriguez–Serrano's work experience. The absence of Rodriguez–Serrano's name from Pesina's list is not sufficiently reliable to overcome Rodriguez–Serrano's initial showing, because there is no indication that the list was generated in a manner conducive to reliability or completeness. The government never asked Pesina about Rodriguez–Serrano specifically or discredited the co-workers who wrote letters in support of Rodriguez–Serrano's application.

The SAW statute explicitly places the burden on the government to disprove the applicant's evidence, and the government did not do so. Therefore the LAU abused its discretion in denying Rodriguez–Serrano's application for SAW adjustment of status, and the petition for review should be granted. In holding otherwise, the majority places the burden on the wrong party. Therefore I respectfully dissent.